948

DOMESTIC ENGINEERING COMPANY,
a corporation, Plaintiff,

v.

CONOVER–MAST PUBLICATIONS, Inc.,
a corporation, Defendant.

Civ. A. No. 54 C 1649.

United States District Court
N. D. Illinois, E. D.

June 7, 1957.

Williston, McGibbon, Stastny & Borman, and Casper W. Ooms, Chicago, Ill., for plaintiff.

Ross & O'Keefe, Chicago, Ill., Lawler & Rockwood and Nims, Martin, Halliday, Whitman & Williamson, New York City, for defendant.

IGOE, District Judge.

FINDINGS OF FACT.

The Action and the Parties.

1. Plaintiff, Domestic Engineering Company, is an Illinois corporation, having its principal place of business in Chicago.

2. Defendant, Conover-Mast Publications, Inc., is a New York corporation authorized to do business in Illinois, having an office in Chicago and its principal place of business in New York City.

3. Jurisdiction is founded upon Federal Statutes, as follows:

(a) Section 1332 of Chapter 85 of Title 28, U.S.C.A. relating to controversies between citizens of different States, there being more than $3,000 in value, exclusive of interest and costs, reasonably involved.

(b) Section 1338 of Chapter 85 of Title 28, and Sections 1121 to 1126, inclusive, of Chapter 22 of Title 15 U.S.C.A., relating to trademarks; and

(c) Sections 101 and 112 of Chapter 2 of Title 17, U.S.C.A., relating to copyrights.

4. Continuously since November 1937, plaintiff has published a periodical entitled "Institutions Magazine", which covers subjects associated with mass feeding and mass housing and is circulated among hospitals, schools, hotels, motels, restaurants, cafeterias, YMCA's, asylums, jails, clubs, colleges, railway

systems, steamship lines, and other establishments.

5. Continuously since November 1953, defendant has published a periodical entitled "Institutional Feeding and Housing," which covers many of the same subjects covered by plaintiff's magazine and is circulated among many of the same businesses and places as plaintiff's magazine.

6. Defendant is engaged in direct competition with plaintiff by reason of its publication and circulation of its magazine, Institutional Feeding and Housing.

COPYRIGHT INFRINGEMENTS.

The Five Advertisements in the Promotion Booklet.

7. The five advertisements appearing on pages 16, 17, 19, 20 and 21 of plaintiff's Exhibit 38 were original literary and artistic creations of the plaintiff. They were prepared for exclusive use of Domestic Engineering publications and were not to be used elsewhere without the plaintiff's permission.

8. The plaintiff was both the author and proprietor of each of the aforesaid five advertisements.

9. The defendant clipped copies of these five advertisements from copies of plaintiff's magazines and, without permission from the plaintiff, reproduced them in a pre-publication promotion booklet which was circulated among advertisers and advertising agencies.

The Drawing in the Airesearch Article.

10. Plaintiff received from Airesearch Mfg. Co. a photostat of a floor plan blueprint, and plaintiff's employees made extensive additions and changes in it so as to produce a finished drawing suitable for use in plaintiff's magazine as an illustration accompanying an article. Some of the additions and changes made by plaintiff consisted of removing all of the numerals which conformed to a legend in the blueprint; removing lettering and captions and substituting other captions; weighting of lines to show delineations between departments; laying Ben Day patterns on some of the black lines; setting in large type and adding arrows and lines to show flow of food, patrons and dishes for the purpose of illustrating and emphasizing a major theme of the article.

11. The services and work performed by plaintiff on the aforesaid drawing in the Airesearch article resulted in an original, artistic and creative effort by plaintiff, which was published in the June 1953 issue of Institutions Magazine.

12. Plaintiff is the author and proprietor of the finished Airesearch drawing resulting from its work and services, as aforesaid.

13. Defendant made a copy of plaintiff's drawing which was identical, with the exception of the addition of the word "cashier" (which appears in a type different from the type Institutions Magazine used in all of the rest of the drawing), and crosshatching of the arrows showing the flow of patrons. This copy was published without permission of plaintiff in the June 1955 issue of defendant's magazine and circulated among its recipients.

The Drawing in the Ohio State Article.

14. Plaintiff received from Ohio State University a large detailed blueprint of a cafeteria floor plan. In the form received, it was not suitable as an illustration to accompany a magazine article. Plaintiff made a tracing of the outer delineations and spaces; removed many captions and changed or substituted others; ordered and set suitable type; added an identification caption, and otherwise made substantial and original changes to produce a suitable illustration for the article.

15. The services and work performed by plaintiff on the aforesaid drawing in the Ohio State article resulted in an original, artistic and creative effort by plaintiff.

16. Plaintiff is the author and proprietor of the finished Ohio State draw-

ing resulting from its work and services as aforesaid.

17. Plaintiff printed, published and circulated the Ohio State drawing in its February 1953 issue of Institutions Magazine.

18. Defendant, without permission of plaintiff, copied and appropriated plaintiff's Ohio State drawing exactly as it appeared in plaintiff's said magazine and printed, published and circulated it in the April 1955 issue of its magazine.

### The Allstate Article.

19. Plaintiff published an article in its May 1954 issue of Institutions Magazine pertaining to the Allstate Insurance Company cafeteria. Defendant conceded at the trial that it copied and appropriated substantial portions of this article in an article published by it in its July 1954 issue, and it was guilty of copyright infringement with respect thereto.

### The Four Flooring Articles.

20. One Dave E. Smalley wrote and sold to the plaintiff, receiving payment therefor, four articles on various flooring subjects. The articles were printed, published and circulated by plaintiff in its March 1951, June, November and December 1953 issues of Institutions Magazine.

21. Plaintiff is the proprietor of all of these articles.

22. Defendant, in its March 1954 and April 1955 issues, copied and appropriated the same material and employed much of the same terminology and combination of ideas and thoughts as appeared in plaintiff's earlier articles.

23. Each of the various issues of plaintiff's Institutions Magazine in which any and all of the advertisements, articles and drawings, heretofore referred to, were published, were copyrighted by the plaintiff under the provisions of section 3, Chapter 1, Title 17 U.S.C.A., and registration certificates were duly issued by the Register of Copyrights.

24. Proper notices of the fact of registration under section 3, Chapter 1, Title 17 U.S.C.A. appeared in each and every issue in which any of the said advertisements, articles and drawings were published.

### TRADE-MARK INFRINGEMENT.

25. Plaintiff duly registered the name "Institutions" as a trade-mark in the United States Patent Office on March 22, 1938. Such registration was made under the Act of 1905 (Title 15 U.S.C.A. § 81 et seq.).

26. Plaintiff's said trade-mark was made subject to and became entitled to the benefits of the Lanham Act of 1946 (Title 15 U.S.C.A. § 1051) by republication thereunder on February 22, 1949.

27. Plaintiff has taken all necessary action to keep said registration and said statutory trade-mark in full force and effect, including the filing on October 4, 1954, of its statutory combined affidavit, and said registration and trade-mark are now in full force and effect.

28. More than five years have elapsed since republication of plaintiff's trade-mark under the Lanham Act and the commencement of this suit.

29. Beginning in August 1942, plaintiff carried on the front cover of its magazine a sub-caption which read, in part, "Institutions Magazine covers the subjects associated with the mass feeding and mass housing of individuals;" beginning in December 1942, such sub-caption was changed to read, "Institutions Magazine covers the subjects associated with the mass feeding and mass housing of individuals in hospitals, schools, hotels, restaurants and other institutions;" beginning in March 1943, plaintiff carried a sub-caption or panel on either side of the front cover, logotype, one of which read, "The magazine of mass feeding and mass housing subjects common to all types of institutions;" that beginning in January 1953 and continuing to the present time, the plaintiff's magazine carried as a title and sub-title the words, "Institutions Magazine, of Mass Feeding—Mass Housing."

30. The word "institutions" has had and now has many and varied meanings, and the limits and extent of these are presently not well defined.

31. The word "institutions" is not, in the trade-mark sense, "descriptive" either of plaintiff's magazine or its subject matter.

32. The word "institutions" as used by plaintiff for the title of its magazine is arbitrary or, at most, suggestive, and is not "descriptive."

33. The plaintiff has spent large sums of money in advertising and promoting its title "Institutions Magazine" and in identifying it with its magazine. As the result of such advertising and promotion, persons, readers, advertisers and advertising agencies having an interest in or knowledge of the activities and subjects covered by plaintiff's magazine have identified the word "Institutions" with plaintiff's magazine and as the title thereof.

34. The plaintiff has spent large sums of money in advertising and promoting its title and subtitle "Institutions Magazine, of Mass Feeding—Mass Housing." As the result of such advertising and promotion, persons, readers, advertisers and advertising agencies having an interest in or knowledge of the activities and subjects covered by plaintiff's magazine have identified the words "Institutions Magazine, of Mass Feeding—Mass Housing" with plaintiff's magazine and as the title and sub-title thereof.

35. As a result of the aforesaid identification of plaintiff's registered trade-mark "Institutions" with its said magazine, plaintiff has succeeded in establishing a secondary meaning in the word "institutions", namely, Institutions Magazine published by the plaintiff.

36. As a result of the aforesaid identification of plaintiff's composite trade-marks "Institutions Magazine, of Mass Feeding—Mass Housing" with its said magazine, plaintiff has succeeded in establishing a secondary meaning in the aforesaid words; namely, "Institu-tions Magazine, of Mass Feeding—Mass Housing" published by the plaintiff.

37. In adopting its title, "Institutional Feeding and Housing," defendant knew or should have known that its deceptive similarity to the name of plaintiff's magazine would result in likelihood of confusion; and, in fact, confusion did occur.

38. Plaintiff notified defendant, on August 10, 1953, that the use of the title, "Institutional Feeding and Housing" infringed upon plaintiff's trade-mark and called upon it to refrain from such use, which defendant refused to do.

## UNFAIR COMPETITION.

39. In competing with the plaintiff, defendant has selected as a title for its magazine "Institutional Feeding and Housing," thereby appropriating a variant of the main title of plaintiff's magazine and further appropriating two words from the subtitle of plaintiff's magazine. This multiple appropriation resulted in deceptive similarity between the titles of defendant's and plaintiff's magazines and likelihood of confusion between the two publications by readers, subscribers, advertisers, and others; and this multiple appropriation of the three significant words from plaintiff's title and subtitle indicates intent on the part of defendant to unfairly appropriate values built up at great expense by the plaintiff.

40. In competing with the plaintiff, defendant has published a promotion booklet which was deceptively similar in appearance to previous promotion booklets published by the plaintiff; and in the preparation thereof, defendant clipped from various issues of plaintiff's magazine, without permission of the plaintiff, 20 advertisements, some of which bore plaintiff's key numbers, and five of which had been prepared by the plaintiff and were owned and copyrighted by plaintiff. There is no trade practice authorizing any such procedure. Defendant's purpose apparently was to convey to prospective advertisers a false

inference that firms of the size and caliber of those advertising in plaintiff's magazine had contracted for advertisements in defendant's new publication.

41. In competing with the plaintiff, defendant has committed seven other acts of copyright infringement, as hereinabove specified, in all of which cases plaintiff was the copyright proprietor, having contributed original, artistic, literary and creative efforts in connection with the drawings and articles previously characterized.

42. In competing with the plaintiff, defendant has appropriated other literary material from plaintiff's magazine and appropriated arrangements and other features which, while not technical copyright infringements, indicated a disposition to unfairly appropriate values from plaintiff's magazine and to compete unfairly with the plaintiff.

43. In competing with the plaintiff, defendant has used for many months after commencement of publication, as circulation statements, estimates of circulation actually made before publication which were grossly inaccurate in categories of greatest buying power.

44. In competing with the plaintiff, defendant has consistently advertised in its advertisements and promotional material that the recipients of its magazine were selected and designated, or entirely selected and designated, by food service equipment dealers, whereas as a matter of fact very substantial numbers of the recipients of its magazine have not been so selected but were designated by liquor wholesalers and were taken from lists prepared by its own Circulation Department; and substantial parts of the claimed circulation of Institutional Feeding and Housing received a liquor magazine with a main title of Bar-Restaurant.

45. In competing with the plaintiff, defendant has used as sales tools in competition with plaintiff, a survey and lists comparing the readership and distribution of plaintiff's and defendant's magazines which were unfairly formulated; and which were designed to give the false impression that portions thereof added by the defendant had, in fact, been prepared by an independent research organization. The survey contained a so-called Non-Readership list which, while literally truthful, was based on unfair questionnaires inviting confusion between the magazine of the plaintiff and the magazine of the defendant and which, in fact, invited conclusions which were not truthful; namely, that the magazine of the plaintiff was not read by important buying units in the field served by plaintiff's and defendant's magazines; and defendant used said list as a sales tool, as aforesaid, in conjunction with another list known as the Readership list, which said list was prepared entirely by defendant's Research Department and which, likewise, was based on unfairly formulated questionnaires, the results of which were, in several score of instances, reported exactly opposite to the answer received in reply to the questionnaire, and this said list was, therefore, in substantial part false and fraudulent, and the use thereof by the defendant to convey the impression that plaintiff's magazine was read by the small economically unimportant activities in the field served by plaintiff's and defendant's magazines, particularly in conjunction with the aforesaid Non-Reader list, was false and fraudulent and constituted the grossest kind of unfair competition.

46. Even if the title of plaintiff's magazine is descriptive and even if plaintiff has not succeeded in giving it a secondary meaning, defendant's use of the word "institutional" and of such word in combination with the words "Feeding and Housing" was so likely to create confusion with plaintiff's magazine that defendant knew, or should have known, of this likelihood of confusion and such use was an act of unfair competition which, in conjunction with all of the other acts of unfair competition, heretofore described, committed by the defendant, constituted an unfair and unlawful course of concerted action.

## DEFENDANT'S FIRST COUNTERCLAIM
### Of Invalidity of Plaintiff's Trade-Mark.

47. Plaintiff was entitled to the issuance of its trade-mark registration No. 355,664.

48. There is no evidence that plaintiff or any of its officers or employes made any false statement under oath to induce the Commissioner of Patents of the United States to issue the aforesaid trade-mark registration.

## DEFENDANT'S SECOND COUNTERCLAIM
### Of Copyright Infringements.

*(a) Assembly Line Dishhandler Article.*

49. Defendant has failed to offer any evidence in proof of its claim of trade-mark infringement of this article.

*(b) Snack Service Article.*

50. Plaintiff's article appearing in its July 1954 issue was prepared by it from a general release submitted by a public relations agency. The similarity between expressions appearing in plaintiff's article and the one published by defendant in its April 1954 issue flow from the common source, the publicity release. No material, which is not directly traceable to the common source, has been copied or appropriated by plaintiff from defendant's article.

## DEFENDANT'S THIRD COUNTERCLAIM
### Of Plaintiff's Alleged Circulation Fraud.

51. Plaintiff did not in any material respect misrepresent its circulation. The alleged acts of misrepresentation of its circulation by plaintiff did not occur while plaintiff and defendant were in competition with each other.

## DEFENDANT'S FOURTH COUNTERCLAIM
### Of Plaintiff's Alleged Unfair Competition re Hammergren Letter.

52. The proof offered by defendant consisted solely of a letter from a salesman of the plaintiff to an advertiser named Hammergren, coupled with testimony of defendant's auditor that it had never charged for editorial mention. The letter was no more than a reply to complaints made by the advertiser, who had apparently confused Institutions Magazine with Institutional Feeding and Housing, and had apparently blamed or accused Institutions Magazine of charging for editorial mention or for an unauthorized advertisement. This letter does no more than restate what very obviously had been told by the advertiser to the writer of the letter. Defendant's burden of proof on this charge has not been sustained.

After the conclusion of the trial plaintiff filed a 5th counterclaim in which additional relief was sought because of alleged unfair competition on the part of the plaintiff. Depositions were taken and briefs were submitted in support of this Counterclaim and the matter is disposed of in the findings of fact and conclusions of law submitted herewith.

## DEFENDANT'S SUPPLEMENTAL COUNTERCLAIM
### The Pillsbury Survey.

53. The testimony and the stipulation of facts show that Pillsbury Mills, Inc., of Minneapolis, Minnesota, without any knowledge or participation by plaintiff had a survey made for its own use, which among other subjects contained a media section covering the magazines or periodicals in the multiple feeding and housing field of interest to it. The survey was conducted by the personal interview method by B. Angell and Associates of Chicago, Illinois, using questionnaires developed by Pillsbury Mills, Inc.

The interviewing by B. Angell & Associates of selected representative subjects was completed by them on May 15, 1955. Thereafter Pillsbury Mills, Inc., tabulated the information received, and thereafter authorized its advertising agency to sell the media portion thereof on November 15, 1955. Plaintiff learned of the existence of this survey in February of 1956.

Thereafter on April 25, 1956, Pillsbury Mills, Inc., offered to sell the media portion of this survey to the plaintiff, and a contract was thereafter entered into between Pillsbury Mills, Inc. and the plain-

tiff for the purchase of the right to use this survey in exchange for a $3,000 advertising credit, subject to two conditions. First that it was to be represented as "a National Survey conducted by a major flour miller", and second, that the sale of the material was not to be construed as an endorsement by Pillsbury Mills, Inc., of Institutions Magazine of its circulation or trade coverage.

The survey material as received by plaintiff from Pillsbury Mills, Inc., is known in the record herein as Exhibits 2 to 13 of plaintiff's Answers to Interrogatories, and is commonly referred to in the testimony as the "white sheets". Plaintiff prepared a supplementary synopsis or brochure for explanatory use in conjunction with the white sheets. In this supplement part of the data, with respect to the most widely read magazines competitive to plaintiff's magazine, was reduced to bar graphs. This necessarily eliminated mention of many of the magazines which had low percentages of readers. (Exhibit "A" to defendant's Supplementary Answer and Counterclaim.)

A preliminary photostatic mock-up of this supplementary synopsis was submitted to Pillsbury Mills, Inc., for its approval, which resulted in only minor changes being made therein, and an agent of Pillsbury Mills, Inc., in referring to this synopsis stated, "First of all factually I found no error in your presentation". (Defendant's Exhibit X-2.)

This Supplementary Synopsis whenever issued by plaintiff to any of its salesmen was forwarded with the Pillsbury white sheets clipped and attached to all copies, and plaintiff's salesmen were instructed to use the said supplementary synopsis with the Pillsbury white sheets. Although the evidence shows several instances of use by plaintiff's salesmen of the white sheets alone, there is in evidence no instance of any use by any of plaintiff's salesmen of the supplementary synopsis without the white sheets. In the one instance testified to by one of defendant's salesmen when this material was encountered in calling on a prospect, he found both the supplementary synopsis and the white sheets together in the file of that particular advertising agency.

There is no evidence that plaintiff made any unfair use of the Pillsbury Survey, nor has defendant proved that it misrepresented the contents thereof.

### CONCLUSIONS OF LAW.

1. The following advertisements, drawings and literary material, protected by plaintiff's "issue" copy rights, have been infringed by defendant:

(a) The five advertisements appearing on pages 16, 17, 19, 20 and 21 of plaintiff's Exhibit 38.

(b) The drawing in the Airesearch article (plaintiff's Exhibit 65).

(c) The drawing in the Ohio State article (plaintiff's Exhibit 66).

(d) The Allstate article (plaintiff's Exhibit 56).

(e) The four Flooring articles (plaintiff's Exhibits 59 and 61).

and plaintiff is entitled to a Writ of Injunction restraining defendant from further acts of copyright infringement and for an order of reference to enable it to establish its damages.

2. Plaintiff has a valid common law and statutory trade-mark in the name "Institutions" as the title for its magazine.

3. Plaintiff has a valid composite trade-mark in the combination of the words "Institutions Magazine, of Mass Feeding—Mass Housing" as a title and subtitle for its magazine.

4. Plaintiff's statutory trade-mark in the name "Institutions" as a title for its magazine is incontestable under Section 15 of the Lanham Act, 15 U.S.C.A. § 1065.

5. The defendant has been guilty of acts of unfair competition in its competition with plaintiff, and plaintiff is entitled to a Writ of Injunction restraining defendant from the commission of such acts and to an order of reference to allow plaintiff to establish its damages.

6. The act of defendant in selecting the title "Institutional Feeding and Housing" for its magazine constituted an infringement of the common law and statutory trade-mark of plaintiff in the name "Institutions" as the title for its magazine, and the act of defendant in selecting the title "Institutional Feeding and Housing" for its magazine constituted an infringement of the plaintiff's composite trade-mark in the combination of the words "Institutions Magazine, of Mass Feeding—Mass Housing" as the title and subtitle for plaintiff's magazine; and plaintiff is entitled to protection of its said trade-mark or trade-marks by a Writ of Injunction restraining defendant from continuing to use the title, "Institutional Feeding and Housing," or any similar title, and to an order of reference to allow plaintiff to establish its damages.

7. The word "institutions" is not descriptive of plaintiff's Institutions Magazine or of its contents or subject matter, but is arbitrary or merely suggestive thereof.

8. Even if the title of plaintiff's magazine is descriptive, plaintiff has:

(a) established a secondary meaning in the title to its Institutions Magazine, and

(b) established a secondary meaning in the title and subtitle of its "Institutions Magazine, of Mass Feeding—Mass Housing."

9. Even if the title of plaintiff's magazine is descriptive and even if plaintiff has not succeeded in giving it a secondary meaning, defendant's use of the word "Institutional" and of such word in combination with the words "Feeding and Housing" as the title of its magazine was so likely to create confusion with plaintiff's magazine that defendant knew, or should have known, of this likelihood of confusion, and such use was an act of unfair competition which, in conjunction with all of the other aforesaid acts of unfair competition committed by the defendant, constituted an unfair and unlawful course of concerted action and entitles plaintiff to protection of its trade-mark by a Writ of Injunction restraining defendant from continuing to use the title "Institutional Feeding and Housing," or any similar title, and to protection from the aforesaid acts of unfair competition by said Writ, and to an order of reference to allow plaintiff to establish its damages.

10. Plaintiff is not guilty of copyright infringement of defendant's "Snack Service" article.

11. Plaintiff is not guilty of misrepresentation of its circulation, as charged by defendant.

12. Plaintiff is not guilty of misrepresentation amounting to unfair competition, as charged by defendant.

13. All of defendant's counterclaims must be dismissed.

14. Plaintiff is not guilty of unfair competition with respect to the Pillsbury Survey, and did not misrepresent that survey or the contents thereof as charged by the defendant, and defendant's Supplemental Counterclaim must be dismissed, and the defense to the Complaint based thereon denied.